THE STATE OF CONNECTICUT *vs.* BENJAMIN F. RICKER.

First Judicial District, Hartford, January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

It is within the judicial discretion of the trial court, in furtherance of justice, to reopen a cause, civil or criminal, after the evidence has been closed and the arguments have commenced, and allow the introduction of further testimony, provided the party making the request has been fair and diligent in trying his cause in the regular way, and his opponent is afforded full opportunity to meet the new evidence.

In the present case—a prosecution for stealing three heifers in the latter part of August, 1914,—a witness for the State identified the stolen animals as those of the complainant, and on his cross-examination testified that the heifers had calved about April 1st, 1915. In the opening argument the accused insisted that if the heifers calved on or about April 1st they could not have been the complainant's, since the evidence of the State was such as to have precluded them from calving as late as that. Upon the following day, and before further argument, the State's Attorney moved to reopen the case and allow the witness, who said he was mistaken, to change his testimony as to the date when the heifers had calved; and this the court permitted, giving the accused full opportunity to introduce testimony in rebuttal. *Held* that no principle of law was violated in permitting the witness to change his testimony at that late hour, after his attention had been called to the conse-

quences of his former statement, and after he had had an opportunity to confer with other interested parties; though these considerations were proper for the trial court in passing upon the motion to reopen, and for the jury in weighing the credibility of the testimony.

This discretionary power ought not to be exercised to the prejudice of the accused; but this means a legal prejudice, not merely disadvantage to the accused arising from the admission of the evidence out of its order, or because, by reason of that fact, the evidence assumes an importance it would not otherwise possess.

Evidence may be so clearly immaterial as to render its admission harmless.

Argued January 4th—decided March 15th, 1916.

INFORMATION for stealing three Holstein heifers, brought to the Superior Court in Litchfield County and tried to the jury before *Reed, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

The accused was convicted of stealing three Holstein heifers belonging to one Lynn; and the State's evidence tended to show that the heifers were missed from a well-fenced pasture in Paddy Hollow in the town of Bethlehem, on August 25th, 1914; that in pursuance of a previous agreement to procure and sell three heifers to one Dinniman, the accused delivered them to a cattle dealer named Booth, on August 26th, who in turn delivered them, on the same day, to Dinniman, in Bethany; that on August 27th Lynn found two of them in Dinniman's possession, the third having been already slaughtered; and that about three days afterward, with one Houghton, who claimed to be familiar with the heifers, Lynn again identified them and took them into his possession, where they had since remained.

The main defense was that these three heifers, which the accused admittedly sold to Dinniman, were the property of his wife, and had been wrongfully identified as the property of Lynn. The State called as a witness Houghton, who testified to his familiarity with Lynn's

heifers and to the identification of the two heifers in Dinniman's possession as Lynn's property. On cross-examination he testified that the heifers had since calved, giving the date as about April 1st, 1915. After the State rested, the accused offered evidence to prove, among other things, that the heifers owned by the wife of the accused had been allowed to run with a bull in the spring and summer of 1914. In the opening argument for the defense, counsel made the claim, based upon Houghton's evidence of the date when the heifers had calved, that they could not have been Lynn's heifers, for the evidence was that Lynn's heifers had been in a well-fenced pasture where there was no bull since May, 1914; and that they must have belonged to the wife of the accused, whose heifers had been allowed to run with a bull all through that spring and summer. At the close of this argument the court adjourned until the following morning, when the State's Attorney, after the jury had been excused, moved to reopen the case and to recall Houghton, who had informed him that he had made a mistake and wished to correct his testimony as to the time when the heifers in Lynn's possession had calved. After argument, and over the objection and exception of the defense, the court permitted the cause to be reopened for that purpose, and stated to counsel for the defense that it would grant full time and opportunity to offer testimony in rebuttal, if desired. Thereupon Houghton testified that he desired to change his testimony, that he should have stated the heifers calved along in the winter, probably in January. Other facts are stated in the opinion.

*Leonard J. Nickerson* and *John F. Addis*, for the appellant (the accused).

*Donald T. Warner*, State's Attorney, for the appellee (the State).

BEACH, J. The assignments of error chiefly relied on are those which attack the action of the trial court in reopening the cause, during the arguments, to permit the State's witness Houghton to correct his testimony. In criminal, as well as in civil cases, the court has discretionary power to permit the cause to be reopened after arguments have commenced. The following cases were so reopened to permit proof of the venue, after counsel for the accused had claimed in argument that no such proof had been made. *Pond* v. *State*, 55 Ala. 196; *State* v. *Teissedre*, 30 Kan. 476, 2 Pac. 650; *Commonwealth* v. *Texter*, 2 Browne (Pa.) 247; *Wiggins* v. *State*, 80 Ga. 468, 5 S. E. 503; *State* v. *Martin*, 89 Me. 117, 35 Atl. 1023. In *North* v. *The People*, 139 Ill. 81, 28 N. E. 966, the closing argument for the accused in a murder trial was stopped and the State allowed to prove an ordinance of the city of Pontiac creating the office of city marshal, which had been held by the deceased. In *People* v. *Blake*, 157 Mich. 533, 122 N. W. 113, a trial for murder committed in resisting arrest for burglary, the State, after commencing argument, was allowed to offer as exhibits a collection of incriminating articles which had already been identified but not offered in evidence during the trial. In *Commonwealth* v. *Ricketson*, 46 Mass. (5 Met.) 412, 429, testimony of a nature not disclosed in the report was admitted after the cause had been committed to the jury, and an exception on that ground was dismissed almost as a matter of course. In *Jordan* v. *State*, 22 Fla. 528, 531, further evidence not otherwise specified was admitted after counsel for the prisoner had commenced his argument, and the court said: "The manner of the submission of testimony to the jury is a matter in the sound discretion of the court and cannot be complained of unless it is in some way shown to have precluded the defendant from having a fair and impartial trial. This

is not shown by the statement that its irregularity consisted only in its submission out of the usual order of its procedure before argument, the prisoner not being deprived of his right to introduce evidence in rebuttal of it nor his counsel from commenting on its effect to the jury." In *State* v. *Jones*, 80 Wash. 588, 142 Pac. 35, and in *Martin* v. *Commonwealth*, 145 Ky. 752, 141 S. W. 54, it was held error not to reopen the case after the testimony had been closed, in order to permit the accused to offer newly-discovered, material evidence in rebuttal; and in the latter case it was said (p. 755) that the control of a criminal case by reopening it after the evidence is closed rests largely in the wise discretion of the trial court exercised for the purpose of promoting justice. In *Jenkins* v. *State*, 118 Ga. 780, 45 S. E. 604, a State's witness was recalled while the argument for the defense was in progress, and permitted to testify as to a fact tending to identify a stolen animal with the remains found in the prisoner's possession.

On the other hand, in *Looney* v. *The People*, 81 Ill. App. 370, on which the appellant relies, a witness for the State testified to an incriminating conversation and fixed the date of it; the defense then established a complete *alibi;* the State offered no evidence in rebuttal of the *alibi*, but after the argument for the accused was completed the case was reopened and the State's witness allowed to rebut the *alibi* by fixing another date for the alleged conversation. This was held error, on the ground that the State had full opportunity to rebut the *alibi* at the proper time, and that there was no showing which justified the subsequent admission of the evidence out of its proper order. In *Wood* v. *State*, 11 Okl. Cr. 176, 144 Pac. 391, and in *People* v. *Harper*, 145 Mich. 402, 108 N. W. 689, the State's Attorney intentionally kept back a material witness, and it was held error to allow him to be called and to testify to matters

in chief after the defense had rested. In *Meakim* v. *Anderson,* 11 Barb. (N. Y.) 215, a refusal to reopen was upheld.

It thus appears that the discretion has been upheld when exercised solely to promote the ends of justice, on condition that the party in whose favor it is invoked has been fair and diligent in trying his cause in the regular way. In the present cause, the date on which these heifers calved was no part of the State's case; it was brought out on cross-examination, and as it referred to something which happened long after the crime, its supposed importance was not entirely obvious until it was made much of in the opening argument for the accused. Then the witness informed the State's Attorney that he had made a mistake and desired to correct his testimony. Assuming that the matter possessed the importance now attributed to it, we think the court was entirely justified in reopening the case upon being informed that the witness claimed to have made a mistake, and at the same time giving the accused full opportunity for testimony in rebuttal.

No principle of law was violated in permitting the witness to change his testimony at that late hour in the trial, or after his attention had been called to the consequences of his former testimony, or after he had had an opportunity to confer with other interested parties. These considerations doubtless affect the probability of his claim that he had made a mistake in his original statement. Whether he was acting in good faith in claiming to have made such a mistake was a question for the trial judge to consider in exercising his discretion, and a question for the jury to consider in weighing the testimony. It is not a question for this court.

It is quite true, as the appellant claims, that this discretionary power ought not to be exercised when the accused will be prejudiced thereby. Prejudice, in this

connection, means legal prejudice. It is not enough that the testimony so admitted out of its order is disadvantageous to the accused, or that by coming out of its order it assumes an importance which it might not otherwise have possessed. The accused suffered no legal prejudice in this case, for the court gave full opportunity for rebuttal and for comment upon the evidence to the jury, and no complaint is made of the charge.

A witness testified to a conversation with the accused in the course of which the witness told the accused that Lynn had a pasture "over in the Hollow." Presumably this evidence was offered for the purpose of attempting to show that the accused knew the location of Lynn's pasture. The witness was then allowed to testify, under objection and exception, that in using the word "Hollow" he had in mind Paddy Hollow, and ended by saying that he did not know himself where Lynn's pasture was.

Exception is also made to the admission of a statement by the cattle dealer, Booth, that he found no difficulty in picking out from the herd five cattle which belonged to him. The supposed significance of this testimony was in its connection with the subsequent identification of the stolen heifers by Lynn and Houghton.

We think both of these items of evidence were so immaterial as to be quite harmless.

There is no error.

In this opinion the other judges concurred.