JOHNS, Plaintiff in error, v. STATE, Defendant in error.

*May 5—June 6, 1961.*

120

For the plaintiff in error there were briefs by *Rosenak &amp; Rosenak* of Milwaukee, and oral argument by *Janice M. Rosenak.*

For the defendant in error the cause was argued by *John H. Bowers,* assistant attorney general, and by *Hugh R. O'Connell,* assistant district attorney of Milwaukee county, with whom on the brief were *John W. Reynolds,* attorney general, *William A. Platz,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee county.

HALLOWS, J.   The actions were commenced by warrants and complaints.  Johns was extradited from Illinois and after the extradition, informations were filed charging him and one Robert O'Connor with armed robbery and first-degree murder.  No preliminary examination was held.  Johns moved in the municipal court to remand the case to the

district court for a preliminary examination. The motion was denied. Later he was arraigned and pleaded not guilty.

The first question is whether Johns was entitled to a preliminary examination. An information should not be filed until a defendant has a preliminary examination unless he waives it or is a fugitive from justice.[1] The requirement of a preliminary examination is of statutory creation and is a personal privilege of the accused, unknown to common law. *State ex rel. Durner v. Huegin* (1901), 110 Wis. 189, 85 N. W. 1046; *State ex rel. White v. District Court* (1952), 262 Wis. 139, 54 N. W. (2d) 189. The provision dispensing the requirement of preliminary examination in the case of a fugitive from justice has been on our statute books since 1871.

It is contended that the provision dispensing with a preliminary examination in the case of a fugitive from justice is unconstitutional in that it denies equal protection of the laws and violates due process. This argument claims the classification is unreasonable and is based on no substantial and justifying distinction because once a criminal is apprehended, there is no reason for trying him any differently than any other accused and under the statute non-residents are treated differently than residents. We find no merit in these contentions. The preliminary hearing is designed to protect the accused from hasty, improvident, or malicious prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty. *Thies v. State*

---

[1] "955.18 [Formerly sec. 355.18 (1), Stats. 1953.] PRELIMINARY EXAMINATION; WHEN A PREREQUISITE TO INFORMATION. (1) No information shall be filed until the defendant has had a preliminary examination unless he waives such examination, except that informations may be filed without examination against fugitives from justice within the meaning of the constitution and laws of the United States and against corporations. The omission of a preliminary examination shall not invalidate any information unless the defendant moves to dismiss."

(1922), 178 Wis. 98, 189 N. W. 539; 14 Am. Jur., Criminal Law, p. 935, sec. 241. The process of extradition satisfies the purposes of a preliminary hearing and after an accused has been extradited, he stands in a different category or classification than one merely accused of a crime. The classification is reasonable.

Nonresidency may be incidental but it is not an essential element in the concept of a fugitive from justice. A fugitive from justice has been interpreted in the context of extradition to be "simply a person who, having been in a state when a crime is alleged to have occurred within its borders, and being charged with the offense, is found outside the state." *State ex rel. Krueger v. Michalski* (1957), 1 Wis. (2d) 644, 647, 85 N. W. (2d) 339; citing *Ex parte Reggel* (1855), 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250; *Biddinger v. Commissioner of Police* (1917), 245 U. S. 128, 38 Sup. Ct. 41, 62 L. Ed. 193. A fugitive may or may not be a nonresident. The classification is not based upon nonresidency. A Wisconsin resident may be a fugitive from justice as well as a nonresident. There being no constitutional right to a preliminary hearing in Wisconsin or under the federal constitution, and the statute being a reasonable exercise of legislative power, it follows that a fugitive from justice is not denied due process of law by not being granted a preliminary examination after he has been extradited.

Johns argues his conviction must be reversed unless the denial of the motion was justified on the grounds he was a fugitive from justice and claims the record does not support the fact he was a fugitive. Johns relies on *Hyatt v. People ex rel. Corkran* (1903), 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657, but the *Hyatt Case* is not applicable. In that case, the question of fugitive status was raised in the asylum state and it was held the accused had a right to raise that issue. In the case before us, Johns made an oral motion to

remand the case for a preliminary examination. On that motion, he produced no evidence of his status. However, without objection, the assistant district attorney read into the record the extradition proceedings had in Illinois. In such proceedings, Johns had an opportunity to prove he was not a fugitive from justice and had not been in the state of Wisconsin at the time of the alleged crime. This he did not do. When Johns was brought back to Wisconsin under the warrant of the governor of Illinois pursuant to the extradition proceedings, his status was that of a fugitive, at least, there was a presumption he was a fugitive which arose from the regularity of the proceedings which included the existence of the essential facts as to a fugitive status supporting the requisition of the governor of Wisconsin and the warrant of the governor of Illinois. *State ex rel. Kohl v. Kubiak* (1949), 255 Wis. 186, 38 N. W. (2d) 499. The defendant had the burden of proving by competent evidence he was not a fugitive from justice in order to overcome the presumption to the contrary arising from the face of the extradition warrant. *People ex rel. McNichols v. Pease* (1907), 207 U. S. 100, 28 Sup. Ct. 58, 52 L. Ed. 121. Such burden of proof was not met by the plaintiff in error.

Johns further contends that the presumption arising from the extradition does not necessarily prove he was a fugitive within the meaning of the constitution and the laws of the United States because he might have been extradited without being a fugitive within the meaning of sec. 955.18 (1), Stats. It is true that the Uniform Criminal Extradition Act allows extradition of persons who are not considered fugitives under the constitution and laws of the United States. Sec. 6 of that act, which is sec. 964.06, Stats., does allow the extradition of an accused who is not a fugitive from justice within the meaning of the federal constitution. *In re Roma* (1948), 82 Ohio App. 414, 81 N. E. (2d) 612; *English v. Matowitz* (1947), 148 Ohio St. 39, 72 N. E.

(2d) 898. However, in this case Johns was not extradited under sec. 6 but under sections referring to a fugitive from justice. The affidavit for extradition recited the accused was present in Wisconsin at the time of the commission of the alleged crime and thereafter fled from the state, and the requisition of the governor for extradition stated he fled from the justice of this state and had taken refuge in the state of Illinois. Judicial notice of these documents in the office of the secretary of state may be taken. See Currie, Appellate Courts Use of Facts Outside of the Record by Resort to Judicial Notice and Independent Investigation, 1960 Wisconsin Law Review, 39.

The next contention raises a question of first impression for this court. Johns did not take the witness stand in his own behalf. His counsel did not ask for any instructions covering his failure to testify and the court did not instruct the jury his failure to testify created no presumption against him. In this state, a defendant in a criminal action is a competent witness. His refusal to testify creates no presumption against him.[2] It is argued that in the absence of a request, the court was under a duty to instruct the jury no presumption arose from the failure of the defendant to testify. No motion for a new trial was grounded on this alleged error and such assignment is not properly before us as a matter of right. However, since Johns has been found guilty and sentenced to life imprisonment and the question is of great importance in the administration of justice, we will consider the question.

In at least 42 states there exist statutes prohibiting any inference to be drawn from an accused's failure to testify. 1 Wigmore, Evidence (2d ed.), p. 865, sec. 488, note 2.

---

[2] Sec. 325.13, Stats. "PARTY MAY BE WITNESS, CREDIBILITY. . . . (2) In all criminal actions and proceedings the party charged shall, at his own request, but not otherwise, be a competent witness; but his refusal or omission to testify shall create no presumption against him or any other party thereto."

While these statutes vary, they fall into three basic classes and provide either (1) the failure of the defendant to testify shall not create any presumption against him, (2) such failure shall not be the subject of comment by counsel or by either the court or counsel, or (3) contain both provisions. See 31 Michigan Law Review, 40–43. In at least three states, a statute requires the trial judge, upon request, to instruct the jury in accordance with the statute: Indiana (Burns, Stats. Anno. 1926, sec. 2267); Nevada (Rev. Laws of 1912, sec. 7161); and Washington (Compiled Stats., 1922, sec. 2148).

At first blush, one would think, as contended for by Johns, it was the duty of the trial court to invariably give such an instruction in a criminal case when the defendant does not take the stand. The duty is based on the reasoning that such an instruction is favorable to the defendant, is part of the law of the case, and counsel for the accused has a right to expect the trial court to give such an instruction without any request. However, this reasoning finds very little support in the cases which have considered the problem and there exists among trial judges and trial counsel a division of opinion. It is believed the giving of such an instruction might do more harm in directing the jury's attention to the failure of the defendant to testify than not to give an instruction. See *Michael v. United States* (7th Cir. 1925), 7 Fed. (2d) 865. In *Becher v. United States* (2d Cir. 1924), 5 Fed. (2d) 45, 49, the court stated it was not an error for the trial judge on his own motion to mention the fact the defendant had not taken the stand and to instruct the jury no inference of guilt could be drawn therefrom, adding, "It is no doubt better if a defendant requests no charge upon the subject, for the trial judge to say nothing about it." In *Kahn v. United States* (6th Cir. 1927), 20 Fed. (2d) 782, 784, also holding it was not error for the trial court, without a request, to instruct the jury that de-

fendant's failure to take the witness stand was not to be considered an element against him, the court commented it was "perhaps the better rule for a judge to say nothing upon the point unless requested."

At common law, an accused was not a competent witness and could not testify under oath in his own behalf but by enactment of statutes in various states, the accused has been made a competent witness and given the privilege or right to testify if he chose. The constitution, however, protects him from being an unwilling witness. Wisconsin constitution, sec. 8, art. I; United States constitution, Fifth amendment. In states having statutes substantially similar to ours, it is error for a trial court not to instruct when the accused requests it. *Bruno v. United States* (1939), 308 U. S. 287, 60 Sup. Ct. 198, 84 L. Ed. 257.

By the great weight of authority, it is not error for the trial court not to give an instruction that no presumption arises from the failure of the accused to take the witness stand in his own behalf in the absence of a request therefor by the accused.[3] The contrary view is taken in North Carolina for the reason the defendant is justified in assuming the jury would be instructed without so requesting. *State v. Hardy* (1925), 189 N. C. 799, 128 S. E. 152. At one time, the state of Washington espoused the rule that a

[3] *Bradley v. State* (1929), 35 Ariz. 420, 279 Pac. 256; *People v. Mitsunaga* (1928), 91 Cal. App. 298, 266 Pac. 1020; *Matthews v. People* (1895), 6 Colo. App. 456, 41 Pac. 839; *State v. Williams* (1916), 90 Conn. 126, 96 Atl. 370; *Harris v. United States* (1930), 59 App. D. C. 353, 41 Fed. (2d) 976; *Bargeman v. State* (1916), 17 Ga. App. 807, 88 S. E. 591; *Felton v. State* (1894), 139 Ind. 531, 39 N. E. 228; *State v. Reid* (1925), 200 Iowa 892, 205 N. W. 517; *State v. Younger* (1904), 70 Kan. 226, 78 Pac. 429; *People v. Warner* (1895), 104 Mich. 337, 62 N. W. 405; *Metz v. State* (1895), 46 Neb. 547, 65 N. W. 190; *State v. Lesh* (1914), 27 N. D. 165, 145 N. W. 829; *State v. Magers* (1899), 36 Or. 38, 58 Pac. 892; *Bosley v. State* (1913), 69 Tex. Crim. Rep. 100, 153 S. W. 878; *State v. Comer* (1934), 176 Wash. 257, 28 Pac. (2d) 1027.

request was not necessary under a statute requiring the court to instruct that no inference of guilt shall arise against the accused for failure to testify, but the rule was abrogated. *State v. Pavelich* (1928), 150 Wash. 411, 273 Pac. 182; *State v. Pavelich* (1929), 153 Wash. 379, 279 Pac. 1102; *State v. Zupan* (1929), 155 Wash. 80, 283 Pac. 671; *State v. Williams* (1930), 156 Wash. 6, 286 Pac. 65.

On the basis of discretionary power whether such an instruction should be given, some states have held it is not error to so instruct the jury without a request. *Ferguson v. State* (1897), 52 Neb. 432, 72 N. W. 590; *State v. Graves* (1915), 21 N. M. 556, 157 Pac. 160; *Thrawley v. State* (1899), 153 Ind. 375, 55 N. E. 95. The various statutes were fully considered in *People v. Provost* (1906), 144 Mich. 17, 22, 107 N. W. 716, and the following summary stated:

"1. It is not error for the court on its own motion to give such a charge as was requested in this case.
"2. That the court is not required to give such a charge, in the absence of a request so to do.
"3. That, where such a request to charge has been made, it is error to refuse to give it."

We conclude the trial court did not commit error, in the absence of a request by the accused, in not instructing the jury the omission of the accused to testify on his own behalf created no presumption against him.

The defendant requested two instructions concerning the identification of the defendant which the court refused to give. This is assigned as error. Under sec. 270.21, Stats., which is applicable to criminal trials, instructions must be given as asked or refused by the trial court. Without going into detail, the instructions requested were unduly favorable to the defendant and the court was correct in not giving them as tendered. The court did instruct on identification and advised the jury of its duty to acquit the de-

fendant unless convinced beyond a reasonable doubt the defendant was correctly identified as the person who committed the crime. It is true, in the course of instructions, the trial court referred to "the probabilities or improbabilities that it was the defendants and not someone else." This language, taken in consideration with the rest of the charge, did not ask the jury to speculate. The court was speaking of probabilities, not possibilities, as the defendant seems to contend and these were to be taken into consideration with the means of identification, the circumstances under which the defendant was identified, the opportunity for identification, the length of time within which the identification was made, and the description of the defendant's apparel. The entire charge made clear to the jury that unless it was satisfied beyond a reasonable doubt the defendants had been correctly identified as the persons who committed the offense, it was the jury's duty to find the accused not guilty.

The last point raised by Johns is whether his guilt was sufficiently proven. Much of his argument on this point is more properly addressed to the jury than to this court. There were five patrons in the tavern at the time of the alleged crime, three of whom did not see the defendant Johns. Two witnesses at the bar who did see the defendant, one a distance of eight feet, and the other a matter of inches, were positive in their identification. The crux of defendant's argument is that these two witnesses did not see the defendant for sufficient length of time to notice sufficient details to accurately identify the defendant at the trial, some fourteen or fifteen months later. The question of identification, including the opportunity of observance, the circumstances under which it was made, and the credibility of the witnesses, is a matter for the jury under proper instructions. The jury found Johns guilty. The trial court approved the verdict. It would serve no purpose to relate the voluminous

testimony in this case. We are satisfied there was credible evidence upon which the jury could be convinced beyond a reasonable doubt of Johns' guilt. That is the test on this review. *State v. Johnson* (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304.

We are urged a new trial should be granted in the interest of justice under sec. 251.09, Stats., because of the accumulative effect of the assigned errors. On reviewing the record, we believe the issues were fully and fairly tried. While present counsel for Johns might have tried the case differently than trial counsel, we cannot say grave doubt exists in this court's mind of the guilt of the defendant as to lead us conscientiously to believe justice was probably miscarried. We, therefore, must decline to exercise the power to grant a new trial in the interest of justice.

*By the Court.*—Judgment affirmed.